ADLER CENTER FOR BEHAVIOR MODIFICATION, INC., Plaintiff-Appellant, v. CHICAGO TITLE AND TRUST COMPANY, Trustee, *et al.*, Defendants-Appellees.

First District (2nd Division) No. 84—930

Opinion filed December 18, 1984.—Rehearing denied January 22, 1985.

---

*This opinion was adopted as the opinion of the court prior to the retirement of Justice Goldberg.

Letvin & Stein, of Chicago (David J. Letvin and David M. Stein, of counsel), for appellant.

Friedman & Koven, of Chicago (Robert J. Rubin, of counsel), for appellees.

JUSTICE STAMOS delivered the opinion of the court:

This is an appeal from an order denying a motion to set aside a settlement order in a commercial landlord-tenant dispute, and from the denial of plaintiff's motions for change of venue.

Plaintiff, Adler Center for Behavior Modification, Inc., was a commercial tenant at 310 South Michigan Avenue in Chicago. Defendant is the trustee under a land trust which owns the building. Dino D'Angelo is the beneficiary of the trust, and James Gulden is the building manager. Plaintiff's lease contained a provision allowing defendants to substitute similar premises for those occupied by plaintiff upon 90 days' advance notice.

On May 2, 1982, plaintiff was notified by defendant that a new tenant would be occupying plaintiff's offices and that plaintiff would be moved to a new and comparable location at defendants' expense. The notice did not specify the date on which the move was to take place.

On May 20, 1982, defendants terminated plaintiff's lease for fail-

ure to pay rent after a dispute arose involving certain rented storage space. Defendants subsequently accepted payment by plaintiff of rent for May, June and July 1982.

On July 12, 1982, 71 days after plaintiff's receipt of the substitution of premises notice, defendants cut off electrical services to the leased premises. On July 13, the doors to plaintiff's offices were padlocked and workers hired by defendants began removing furniture from the leased premises and dismantling fixtures. Plaintiff filed a verified complaint and an emergency motion for temporary restraining order and preliminary injunction. At this time plaintiff was represented by the law firm of Rudnick and Wolfe. The case was assigned to Judge Holzer, who allowed the requested emergency relief. The dismantling of plaintiff's offices continued, however, and on July 14, 1982, plaintiff presented a verified emergency petition for a rule to show cause, alleging that defendants were removing plaintiff's furniture and demolishing walls in plaintiff's offices in violation of the court's order. Judge Holzer entered and continued the petition for the rule to the next day.

About this time, the law firm of Friedman and Koven, attorneys for defendants, indicated that they sought the disqualification of Rudnick and Wolfe as plaintiff's attorneys due to Rudnick and Wolfe's prior representation of defendant Dino Di'Angelo. On July 14, 1982, Rudnick and Wolfe arranged for the law firm of Weissman and Pond to represent plaintiff. Plaintiff's principal, Benjamin Belden, was introduced to attorney Weissman and endorsed his check for Rudnick and Wolfe's retainer fee over to Weissman.

On July 15, defendants filed a verified motion to dissolve the temporary restraining order. On that same day, Judge Holzer recused himself from the case after engaging in *ex parte* communications about the case with an attorney from Friedman and Koven. The case was assigned to Judge Wosik, and settlement negotiations were begun.

The negotiations took place in Judge Wosik's chambers. Defendants were represented by Friedman and Koven and plaintiff by Weissman, although Weissman had yet to file an appearance in the case. Although the facts relating to the negotiations are unclear, it appears that during the negotiations between Judge Wosik, attorneys from Friedman and Koven and attorney Weissman, Mr. Belden remained in the courtroom, accompanied by four attorneys from Rudnick and Wolfe. Belden and Weissman conferred frequently during the course of the negotiations, and a settlement order, prepared by Weissman, was entered by Judge Wosik on July 15, 1982. The order provided

that plaintiff would vacate the premises and defendants would return plaintiff's furniture and pay $9,500 as damages.

On August 13, 1982, Weissman and Pond filed plaintiff's motion to vacate the July 15, 1982, settlement order and a motion for leave to withdraw as counsel due to "irreconcilable differences" between counsel and client arising from plaintiff's desire to have the settlement order vacated. The court continued the motion to vacate, granted Weissman and Pond's motion to withdraw and granted William Arnold of Arnold and Hennessy leave to file his appearance for plaintiff.

Plaintiff filed an amended motion to vacate on September 24, 1982. Plaintiff was now represented by Marshall Patner in addition to Arnold and Hennessy. The amended motion to vacate included several affidavits detailing the circumstances relating to the conflict of interest which caused Rudnick and Wolfe's disqualification. The motion stated alternative grounds for vacating the settlement order, addressed to the equitable powers of the court, including the "gross disparity" in the bargaining positions of the parties due to the allegedly tainted representation provided by plaintiff's various attorneys, the emotional state of Belden and the insufficiency of the damages settled upon. Plaintiff then filed a motion for change of venue as a matter of right, which was denied. The court also denied plaintiff's second motion for change of venue based upon newly discovered prejudice and denied plaintiff's motion to vacate the July 15, 1982, settlement order. Plaintiff appeals.

Plaintiff first contends that the trial court erred in denying its motion to vacate the July 15, 1982, settlement order. Plaintiff argues that its bargaining position in the settlement negotiations was adversely affected by Rudnick and Wolfe's continued representation of plaintiff after the disclosure of their past representation of one of the defendants. Plaintiff also argues that Weissman, the attorney chosen by Rudnick and Wolfe to represent plaintiff after Rudnick and Wolfe's disqualification, was merely Rudnick and Wolfe's "alter ego" and therefore that Weissman's representation of plaintiff was tainted.

Settlements are to be encouraged and given full force and effect. They should not be set aside absent a showing of fraud or mistake. (*Sheffield Poly-Glaz, Inc. v. Humboldt Glass Co.* (1976), 42 Ill. App. 3d 865, 868, 356 N.E.2d 837.) The cases cited by plaintiff in support of his position are personal injury tort actions in which the conflicting interests of the attorneys and the inadequacy of the settlement amounts indicated that the rights of the plaintiffs had been adversely affected to such an extent that, in the courts' opinion, vacation of the

settlement orders was warranted. (*Scheffki v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.* (1971), 1 Ill. App. 3d 557, 274 N.E.2d 631; *In re Estate of Lilly* (1976), 41 Ill. App. 3d 348, 354 N.E.2d 96.) In *Scheffki*, a minor boy suffered the loss of both legs in a railroad accident. The attorney who purported to represent him was actually a railroad attorney selected by the defendant railroad and introduced to the boy's father by the railroad's claims adjuster. The attorney induced the father to accept a $15,000 settlement. We affirmed the trial court's vacation of the settlement order, based upon the concealment of the attorney's real interest and the inadequacy of the settlement. *Lilly*, which distinguished *Scheffki*, was a wrongful death action in which the decedent's estate was administered by the same law firm that represented the defendant insurer. On appeal, the settlement order was vacated due to the combined effects of the attorney's conflicting interest, the possibly misleading tactics of the insurance adjuster, the small amount of the settlement, and the plaintiffs' lack of education or financial resources, all of which evidenced a great disparity in the bargaining positions of the parties.

The facts of the instant case are not such as would warrant vacation of the settlement order under the standards applied in *Scheffki* and *Lilly*. There was no great disparity in the bargaining positions of the parties in the instant case, as there was in *Scheffki* and *Lilly*. The record shows that Belden accepted the substitution of Weissman for Rudnick and Wolfe and that Belden was present during the settlement negotiations and actively participated in them. Although plaintiff suggests that the amount of damages settled upon was inadequate and therefore indicative of the inequality of the bargaining positions of the parties, the amount, $9,500, was determined with Belden's assistance and does not appear to be grossly inadequate in light of the injuries complained of. The settlement amount therefore does not indicate a disparity in the bargaining positions of the parties on the level of that found in *Scheffki* and *Lilly*.

Plaintiff contends that the conflicting interest of Rudnick and Wolfe is *per se* a sufficient ground for vacating the settlement order. However, no decisional authority is cited for this contention. As we have noted above, the *Scheffki* and *Lilly* decisions demonstrate that the courts require a combination of factors demonstrating prejudice to the complaining party before the existence of an attorney's conflict of interest will necessitate the vacation of a settlement order. Furthermore, although the record in the instant case shows that attorneys from Rudnick and Wolfe were present during the settlement negotiations, there is no indication that they were present for any purpose

other than assuring that the substitution of Weissman and Pond as plaintiff's attorneys was accomplished smoothly and without prejudice to plaintiff, and nothing in the record supports plaintiff's contention that the representation provided by attorney Weissman was tainted or compromised by his association with the Rudnick and Wolfe attorneys.

■ We therefore affirm the trial court's denial of plaintiff's motion to vacate the settlement order. The facts of the instant case are not in any way comparable to those in *Scheffki* or *Lilly*, and there is no indication of the existence of fraud or mutual mistake justifying vacation of the settlement order. It is clear that, under the facts of the instant case, insufficient grounds existed for the granting of the equitable relief sought by plaintiff, and we therefore find that the trial court did not err in refusing to grant such relief.

Plaintiff also contends that the trial court erred in denying its motions for change of venue. Plaintiff's first motion for change of venue as a matter of right, containing a general allegation of prejudice against plaintiff on the part of Judge Wosik, was filed on May 12, 1983. This motion was opposed by defendants on the ground that an order dismissing the cause with prejudice had been entered on July 15, 1982, as part of the settlement order. Plaintiff filed a second motion for change of venue on June 17, 1983, alleging that the prejudice on the part of Judge Wosik occurred after the entry of the July 15, 1983, order dismissing the cause.

Under section 2–1001 of the Code of Civil Procedure, "[a] petition for change of venue shall not be granted unless it is presented before trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case, but if any ground for such change of venue occurs thereafter, a petition for change of venue may be presented based upon such ground." Ill. Rev. Stat. 1981, ch. 110, par. 2–1001(c).

■ Plaintiff's first motion for change of venue as a matter of right was filed after the dismissal of the cause with prejudice by Judge Wosik. Therefore, the motion was not timely filed under section 2–1001(c), and we find no error in the trial court's denial of the motion.

■ Plaintiff's second motion for change of venue, based upon prejudice occurring after the entry of the July 15, 1982, order, was also properly denied. A motion for change of venue which is filed after the court has ruled on a substantial issue in the case "must state specific allegations to support the claim of prejudice and the change should be granted only in the sound discretion of the court." (*In re Marriage of Zannis* (1983), 114 Ill. App. 3d 1034, 1038, 449 N.E.2d

892.) Plaintiff's second motion contains no specific allegations of prejudice and was therefore properly denied by the trial court.

For the reasons expressed above, the decisions of the circuit court are affirmed.

Affirmed.

HARTMAN, P.J., and PERLIN, J., concur.