ALLSTATE INSURANCE COMPANY, Plaintiff-Appellant, v. MICHAEL RIZZI, Indiv. and as Adm'r of the Estate of Holly Rizzi, Deceased, *et al.*, Defendants-Appellees.

First District (1st Division) No. 1—92—3994

Opinion filed August 9, 1993.

Hinshaw & Culbertson, of Chicago (Stephen R. Swofford, David H. Levitt, and Peter C. Morse, of counsel), for appellant.

O'Connor, Schiff & Myers, of Chicago (Mark M. Lyman and Loretta M. Griffin, of counsel), for appellee Michael Rizzi.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff Allstate Insurance Company (Allstate) filed this interpleader action because multiple claims had been filed against plaintiff's insured, defendant James Harasek,[1] regarding an automobile accident. Plaintiff appeals an order of the circuit court of Cook County requiring plaintiff to deposit $300,000, representing the policy limits of the claims.

The record indicates the following facts. In June 1990, Allstate filed an interpleader complaint indicating that on May 5, 1990, Harasek was operating a motor vehicle that caused injuries to some or all of the defendants named in the complaint. Papers filed by defendants allege that Harasek drove an automobile through a Little League baseball diamond, resulting in the death of three children and the injury of nine others.

Allstate's complaint indicates that defendants filed claims against Harasek as a result of this accident. Allstate indicated that without admitting liability, it stands ready, willing and able to settle all claims against Harasek in exchange for full releases of Harasek. However, because of the multiple parties and the seriousness of the injuries, Allstate sought the circuit court's assistance in allocating the $300,000 available under the policy as the court deemed fit and appropriate.

The interpleader complaint also prayed for three specific forms of relief. First, Allstate requested that the court determine the allocation of the $300,000 policy limits to all injured parties. Second, Allstate requested that the court approve the settlement amounts on behalf of the defendants. Third, Allstate sought an order finding that releases entered into between Harasek and defendants are in good faith, barring any and all contribution claims.

Appearances were subsequently filed for defendants Justin Glardon; Kevin Rose; Andrew Vacek; Michael Larmon, individually and as step-father and next friend of Timothy Larmon-Keast; Holly Rizzi; Bruce Anderson, individually and as administrator of the estate of the late Colin Anderson; Jacqueline Tuglus; and Robert Wegnerski, individually and as father and next friend of Peter Wegnerski. Glardon filed an answer denying that Allstate was entitled to interpleader relief.

---

[1]The remaining defendants are those who filed the claims against Harasek, most of whom are discussed later in this opinion.

On May 16, 1990, the trial court entered an order enjoining Allstate from distributing funds until May 30, 1990, and setting a hearing on motions to be filed May 30, 1991. On May 23, 1991, Allstate moved to have the court approve settlements it made with Kevin Rose, Michael Larmon and Timothy Larmon-Keast in the amounts of $80,000, $8,000 and $12,000, respectively. These three defendants had executed releases of the insured. The Rose settlement had been approved in another court pursuant to a separately filed lawsuit.

On May 30, 1991, Allstate filed an amended interpleader complaint, adding Harasek as a defendant. This amended complaint omits the earlier reference to allocating the $300,000 as the court deems fit and appropriate; instead, it simply asks for assistance. The first specific prayer for relief is similarly amended.

On July 22, 1991, Allstate filed motions seeking approval of settlements reached with Holly Rizzi, Andrew Vacek, Ryan Womack and the Wegnerski defendants. On August 19, 1991, the four nonsettling defendants filed memoranda in opposition to the Allstate motions.

On September 12, 1991, the trial court held a hearing on Allstate's motions for approval of settlements. During this hearing, the trial court first considered whether the matters presented in this case were properly presented in an interpleader action. The trial court concluded that Allstate's interpleader action was proper. The trial court entered an order directing the parties to submit memoranda regarding: "(a) whether the court has the option to approve settlements of less than all the claims or whether it must divide the insurance proceeds among all claimants; (b) if the court may approve settlements of less than all claimants, what standards must the court use; (c) if the court must divide the insurance proceeds among all claimants, what type of hearings the court must hold; [and] (d) whether Allstate is permitted to pay the insurance proceeds to some claimants without receiving a release of Harasek in return."

Between September 17 and December 10, 1991, Tuglus, the Anderson defendants, Glardon and Rizzi filed answers to Allstate's amended complaint. Tuglus and the Anderson defendants denied that Allstate should be entitled to the relief it requested, and also asked that Allstate be ordered to deposit its policy limits with the trial court. Glardon's answer denied that Allstate was entitled to any relief and sought dismissal of the complaint. Rizzi's answer denied that Allstate was entitled to the relief it sought, but prayed that the trial court assist in the distribution of the policy limits.

On June 2, 1992, the trial court denied Allstate's motion to approve settlements and issue good-faith findings. On August 14, 1992,

Rizzi filed a motion requesting that the trial court order Allstate to deposit the interpleader fund with the court and issue an order discharging Allstate from the action. This motion was supported by Glardon and the Anderson defendants and opposed by Allstate.

On October 27, 1992, the trial court issued an order compelling Allstate to deposit the $300,000 with the clerk of court within 21 days of entry of the order. Allstate filed a motion to reconsider, which the trial court denied. Allstate timely filed a notice of interlocutory appeal to this court pursuant to Supreme Court Rule 307 (134 Ill. 2d R. 307). On December 15, 1992, Rizzi moved to dismiss the appeal; this motion was taken with the case.

## I

Initially, we address the motion to dismiss the appeal for lack of jurisdiction. Rizzi maintains that the order appealed from is merely administrative and thus not appealable under Rule 307(a). (See *In re a Minor* (1989), 127 Ill. 2d 247, 262, 537 N.E.2d 292, 298.) Rizzi also contends that the order is in substance a permanent mandatory injunction from which an appeal will not lie. See *Steel City Bank v. Village of Orland Hills* (1991), 224 Ill. App. 3d 412, 416-17, 586 N.E.2d 625, 628.

These arguments, while not completely without merit, are unpersuasive. At this stage of the litigation, Allstate has filed an interpleader complaint, but has not been dismissed from the action. In a similar situation, this court has previously indicated that an order to deposit funds is injunctive in nature and may subject the party so ordered to contempt for failure to deposit the funds. (*Lake Shore Racquet Club, Inc. v. Fireman's Fund Insurance Cos.* (1980), 91 Ill. App. 3d 1118, 1121-22, 415 N.E.2d 625, 627-28 (discussing *American Re-Insurance Co. v. M G I C Investment Corp.* (1979), 73 Ill. App. 3d 316, 391 N.E.2d 532).) Thus, the order cannot be said to be "merely" administrative.

Nor can the order be said to be permanent. Allstate explicitly refuses to admit any liability in its complaint. At this stage of the litigation, the policy limits are not exhausted. As Allstate could hypothetically retain some portion of the deposit, the order may be considered temporary in nature.

We therefore conclude that this court has jurisdiction to consider Allstate's appeal.

## II

Allstate argues that the deposit of funds is not a prerequisite to

pursue interpleader and cannot be required until the relief requested in its amended complaint is granted.

Interpleader, which is governed by section 2—409 of the Illinois Code of Civil Procedure, permits a plaintiff to join as defendants those having claims against it arising out of the same or related subject matter when those claims may subject plaintiff to multiple liability. (Ill. Rev. Stat. 1991, ch. 110, par. 2—409.) Section 2—409 "eliminates the distinction between bills of interpleader and bills in the nature of bills of interpleader and combines them into a single broadened remedy." (Ill. Ann. Stat., ch. 110, par. 2—409, Joint Committee Comments, at 500 (Smith-Hurd 1983).) Section 2—409 is based directly on Federal Rule of Civil Procedure 22. (Ill. Ann. Stat., ch. 110, par. 2—409, Joint Committee Comments, at 500 (Smith-Hurd 1983).) It is therefore appropriate to examine Federal law regarding interpleader under Federal Rule of Civil Procedure 22.

■ Unlike Federal statutory interpleader actions filed pursuant to 28 U.S.C. §1335 (1988), which jurisdictionally requires the stakeholder to deposit the stake with the Federal court, so-called "rule interpleader" proceedings do not require a deposit. (See *General Accident Group v. Gagliardi* (D. Conn. 1984), 593 F. Supp. 1080, 1086-87, *aff'd without op.* (2d Cir. 1985), 767 F.2d 907.) Nevertheless, "the general equitable powers of the court permit, if not invite, the court to receive a deposit and thereafter discharge the stakeholder." (*Gagliardi*, 593 F. Supp. at 1087.) Moreover, there is precedent in Illinois supporting the equitable power of a trial court to order the deposit of funds with the court pending the outcome of litigation, albeit none decided under the exact facts and circumstances presented in this case. (See *Computer Teaching Corp. v. Courseware Applications, Inc.* (1989), 191 Ill. App. 3d 203, 205-06, 547 N.E.2d 718, 720; *American Re-Insurance Co.*, 73 Ill. App. 3d at 324-25, 391 N.E.2d at 539.) Accordingly, we conclude that although a deposit may not be required as a prerequisite to an interpleader action, the trial court may exercise its discretion and order that funds be deposited with the court.

The record in this case, particularly the transcript of proceedings for the hearing on Allstate's motion to reconsider, indicates that the trial court believed it had no discretion as to whether to compel the deposit. The trial court's refusal to exercise its discretion due to its belief that it has none is error. (*E.g., People v. Queen* (1974), 56 Ill. 2d 560, 565, 310 N.E.2d 166, 169.) Whether the error requires reversal depends upon the circumstances presented by each case. See *Queen*, 56 Ill. 2d at 565-66, 310 N.E.2d at 169.

The circumstances of this case must necessarily be viewed in the context of the general rules of interpleader. The *Gagliardi* opinion discusses the general interpleader procedure:

> "Normally, an interpleader action is concluded in two stages. First, the court determines whether interpleader lies, i.e. are there two or more claims to the stake. If so, the stakeholder is ordered to pay or deliver the stake into court and is discharged of further liability insofar as the stake is concerned. *** In the second stage, the adverse claims are adjudicated and the proceeds disbursed." (*Gagliardi*, 593 F. Supp. at 1087.)

The *Gagliardi* court also suggested that it is not improper to file an interpleader action to act as a catalyst for settlement discussions. *Gagliardi*, 593 F. Supp. at 1087.

The record in this case indicates that Allstate filed its interpleader complaint to act as a catalyst for settlement discussions. The record also indicates that the trial court found at the September 12, 1991, hearing that the interpleader was proper. Generally, a trial court should enter a preliminary order memorializing such a finding. (*Elmhurst National Bank v. Glos* (1968), 99 Ill. App. 2d 74, 79, 241 N.E.2d 121, 124.) There does not appear to be such an order in the record on appeal. However, the record does not show that Allstate objected to the absence of a written order in this matter. Indeed, Allstate relies upon the trial court's finding in its brief before this court. Thus, we need not consider whether the failure to enter a preliminary order was error. Following the general procedure for "rule interpleader" set forth in *Gagliardi*, the trial court exercised its general equitable powers and ordered Allstate to deposit the stake with the court. Moreover, the general procedure set forth in *Gagliardi* permits the trial court to order the deposit before it acts upon the merits of the complaint or grants relief. Furthermore, we note that Allstate has failed to cite any authority for the proposition that the trial court may grant only that equitable relief specifically requested by the plaintiff.

Allstate contends that Rizzi's motion to compel the deposit was improper because none of the claimants has a right to any part of the stake at this point in the litigation. However, Rizzi did not assert any right to any specific portion of the stake at this stage of the action. Rather, the motion simply requested that the court compel Allstate to deposit funds with the court in accordance with general interpleader procedure.

Allstate also contends that the general interpleader procedure detailed in *Gagliardi* ignores the difference between bills in interpleader and bills in the nature of bills of interpleader that existed at common

law. However, as noted above, section 2—409 was designed to eliminate these distinctions and adopt the broad remedy afforded to Federal litigants under Federal Rule of Civil Procedure 22. Accordingly, we are persuaded that *Gagliardi* accurately describes typical interpleader procedure.

In sum, we conclude that the trial court erred in believing it lacked discretion in ordering Allstate to deposit funds with the court. However, the order at issue was not only within the scope of the trial court's discretion, but also typical in interpleader actions. In addition, plaintiff has not demonstrated that it would be unduly prejudiced by the order. Consequently, the error was not of a magnitude warranting reversal, given the facts and circumstances in this case.

For all of the aforementioned reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

MANNING, P.J., and O'CONNOR, J., concur.